The action was for damages for injuries alleged to have been sustained by appellee at Ada,t in the Indian Territory, while in the act of alighting from appellant's train.
The petition on which the case was tried, the second amended original petition, filed April 9, 1903, alleged that plaintiff resided in the Territory and that defendant is a railway corporation incorporated under the laws of Missouri engaged as a carrier of persons and freight in said Territory and in the State of Texas. This pleading alleged that defendant had entered its appearance and filed answer and was before the court. On April 11, 1903, defendant answered this pleading by a first amended original answer, and therein excepted specially to it for want of jurisdiction upon the ground that it showed that both plaintiff and defendant were nonresidents of Texas and that the act complained of occurred in the Territory. The pleader in filing this exception must have *Page 613 
overlooked the allegation that defendant was engaged in the business of a common carrier of persons and freight in the State of Texas. There was also a plea to the jurisdiction, and there was evidence that defendant operated its railway in Texas, and in Grayson County, and defendant did not ask any submission of the issue sought to be raised by the plea. There is evidently nothing in the first and second assignments of error. The effort of appellant seems to be an appeal to the impolicy of the court of this State taking cognizance of actions of this character arising wholly in another jurisdiction, where the plaintiff resides and where he has an appropriate remedy. This matter we have discussed in Atchison T. S.F. Ry. Co. v. Keller, 1 Texas Law Journal, 627, 76 S.W. Rep., 801.
Defendant owed plaintiff, a passenger, the high degree of care as stated in the charges mentioned in the third and fourth assignments, which are overruled. San Antonio A.P. Ry. Co. v. Turney, 2 Texas Law Journal, 476, 9 Texas Ct. Rep., 87.
We find as proper conclusions of fact, in support of the verdict, that defendant's servants were guilty of negligence which led to plaintiff's injury, and that plaintiff was not guilty of negligence contributing thereto, and accordingly overrule the fifth assignment of error.
The sixth assignment complains of the charge whereby the jury were instructed: "If you believe from the evidence that plaintiff did not know that the train had not reached the depot, but if you believe from the evidence that plaintiff failed to exercise ordinary care to advise herself of and discover the whereabouts of the train at the time she attempted to alight therefrom, or that she failed to exercise ordinary care in attempting to alight from said train at the place that you find from the evidence she did, and that such want of ordinary care, if any you find there was, in either of these respects, proximately contributed to cause her injuries, if any, then you will find for the defendant."
If we should hold that this charge was erroneous for the reason that the matters of negligence therein referred to were in their nature contributory to her injury, and that therefore the court ought not to have submitted to the jury whether or not they proximately contributed thereto, we still ought not to reverse for such error, as defendant requested the giving of two charges embodying substantially the same subjects, in which the same alleged error occurs. We refer to the eighth and eleventh special requests of defendant. Of these special charges, it might possibly be claimed that they were asked to be given only in the event the court refused to give other special charges (numbers 7 and 10) which were more peremptory in their character. But it will be seen that by numbers 7 and 10 it was sought to have the jury instructed to find a verdict for defendant from the acts alone, without leaving to them any question of negligence. In the charges asked submitting the question whether or not plaintiff's acts were negligent, *Page 614 
etc., both numbers 8 and 11 required such negligence to have contributed to her injuries, in order to defeat her recovery. Under these circumstances defendant is in no position to complain of the charges in that particular.
We are unable to see anything injurious to defendant in what is presented by the seventh assignment. The evidence referred to in the eighth, viz., that plaintiff was a hard working woman, we hold to be a statement of a fact and not of a conclusion. Nor can we see anything of a substantial character in what is referred to in the ninth assignment. It appears that a physician, who testified that he had treated plaintiff for syphilis, was asked if he knew of any other physician having treated plaintiff for said disease. His answer was, "No, sir; I do not keep up with other physicians' business at all. I have enough to do of my own." This answer does not imply that if other physicians had treated her he would probably have known it, but it amounted to this, that if they had treated her, he would know nothing of it. How the jury, from that answer, could have formed the idea that no other physician had in fact treated plaintiff, we are unable to understand. There was nothing in the answer contradictory of testimony that other physicians had treated her for the disease.
From the tenth assignment it appears that defendant sought to prove by a deputy marshal that he held a warrant for a person designated as Dollie at the time of this accident, which he understood as referring to plaintiff and that she was the one he would have arrested under it. The materiality of this evidence is said to consist in its tendency to prove that plaintiff undertook to get off the train before it reached the station to avoid being arrested. As there was no evidence showing that she knew of the existence of the warrant there was no foundation for the theory, and the testimony was properly excluded.
The eleventh assignment claims that there was prejudicial error in permitting the conductor to answer a question as to whether or not there was an electric bell from the ladies' coach, or other means of summoning the conductor or brakeman to attend to the wants of lady passengers, the answer being: "As we pass through the cars if they have any wants they make them known." The contention is that the fact that there may have been no bell or other means of summoning the conductor or brakeman to the ladies' coach was immaterial, and such testimony was calculated to lead the jury to believe that said employes were derelict in their duty to lady passengers in not remaining in the coach with them so that they could be conveniently called. Plaintiff had no wants to be attended to and no occasion to call the employes, and the evidence was immaterial to any issue in the case. But we do not see how it could have led the jury to believe that they were derelict in not remaining in the ladies' coach. Nor do we perceive how the fact of the absence of bells could have had any effect upon a decision of the issue of negligence as it was submitted to the jury. The only matter of negligence *Page 615 
submitted was as to whether or not the conductor announced the station of Ada under circumstances that caused plaintiff to believe, when the train stopped, it was at the station when she proceeded to alight.
From the twelfth assignment it appears that the court refused to permit a witness to testify that about the time plaintiff was injured her general reputation about Ada was that of being a prostitute. This is claimed to have been proper testimony to rebut her claim for damages based upon her allegations and evidence that she was a hard-working woman, in other words, to disprove that she was a hard-working woman.
The fact that plaintiff was a hard-working woman would hardly be rebutted or contradicted by the fact that she had the reputation of being a lewd woman. If it had been sought to be proved that she was a prostitute, that specific fact could not be shown by general reputation. This would probably be sufficient to dispose of the assignment as briefed.
But it seems to us that the assignment should be overruled if we consider the testimony as affecting plaintiff's earning capacity. The witness would have testified that about the time of her injury her general reputation at Ada was that of a lewd woman. According to the evidence she had been away from Ada several weeks when she met this accident on returning there. If she had such reputation when injured, she must have had it before she left Ada, for she certainly could not have acquired it while she was gone. And if she had it before she left, she must have had it some time before, as it takes time for a person to acquire a general reputation. The evidence presented to show her ability to work and earn money consisted of testimony that she was a hard-working woman, and her work so far as earning money was concerned was that of doing washing, cooking and the like, for other people. The jury were not left to determine her earning capacity from general appearances, nor to arrive at a conclusion concerning it solely from the wide discretion they are allowed to exercise in such cases, but plaintiff proved not only the work she was capable of doing, but the particular work she did for wages at and about Ada down to the time she was injured. This work she was doing, notwithstanding her general bad reputation, if such in fact existed. If it had been proved that her reputation was bad, as sought by the witness, it would nevertheless have appeared that she enjoyed the earning capacity which her testimony shows, even with that cloud upon her character. In other words, her earning capacity as proved would have appeared not to be affected by the testimony if admitted, and the only purpose the testimony would have served would have been to prejudice the minds of the jury. There was no error committed in excluding it.
Affirmed. *Page 616 
 ON MOTION FOR REHEARING.
In discussing the sixth assignment of error we overlooked the fact fact that the requested charges there referred to were asked after the court had read its main charge to the jury, therefore the rule announced in Missouri K. T. Ry. Co. v. Eyer, 70 S.W. Rep., 529, applies. The charge, however, was not erroneous, as has been held in Galveston H. S.A. Ry. Co. v. Pendleton, 70 S.W. Rep., 996. A charge as appellant claims this charge should have been framed, has been held erroneous in Missouri K. T. Ry. Co. v. Stinson, 2 Texas Law Journal, 1137, 9 Texas Ct. Rep., 349; Houston T.C. Ry. Co. v. Turner, 2 Texas Law Journal, 1113, 9 Texas Ct. Rep., 295.
The motion is overruled.
Overruled.
Writ of error refused. *Page 617